IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL ELLIS,

    Plaintiff,

v.

DANIEL D. REGAN, ET AL.,

    Defendants.

14cv0004
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

This is a Section 1983 case. Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support of same filed pursuant Fed.R.Civ.P. 12(b)(6). Doc. nos. 58-59. Plaintiff, who is representing himself, has filed two separate Responses to the Motion to Dismiss. Doc. nos. 66-67. Defendants filed a Reply to Plaintiff's Response(s). Doc. no. 70. Defendants' Motion and Plaintiff's Responses include additional documents for the Court's consideration in deciding this Motion to Dismiss. For the reasons set forth below, this Court will grant in part and deny in part Defendants' Motion to Dismiss.

**I. Standard of Review**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563, n.8.

Although a Court must accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom in a light most favorable to the plaintiff, in addition to the facts alleged on the face of the Complaint, a District Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007. Moreover, a Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the Complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## II. Background

The Court accepts as true all facts set forth below, as extrapolated from the Amended Complaint, solely for the purpose of deciding this Motion to Dismiss.

The incident which led Plaintiff to file the instant Amended Complaint occurred on December 31, 2011. Doc. no. 56, ¶ 3.

On December 31, 2011, Plaintiff was the subject of a "traffic stop." Id., ¶¶ 34, 35. The conduct of which Plaintiff complains took place "immediately after [he] was involved in an automobile accident around 4am" when a City of Pittsburgh police officer (Labella) "pulled him out [of] the window, and slammed [him] into the ground face first." Id., ¶ 39.

After Labella pulled Plaintiff out of the vehicle and slammed him to the ground, he was beaten, placed in handcuffs, and stomped upon by two police officers (Labella and Vitalbo), while being subjected to "racial slurs" and threats to kill him. Id., ¶ 39. Plaintiff was taken to

the hospital, where he was treated for broken ribs and other bones, a punctured lung, and lacerations which required stiches. Id., ¶¶ 35-40.

The hospital's medical records will support Plaintiff's contention that the facial laceration, resulting in permanent disfigurement, was not caused by the automobile accident; but rather, was caused by the police officers' assault on him. Id., ¶ 41.

Plaintiff was treated and released by the hospital on December 31, 2011. Plaintiff was charged and arrested for alleged offenses that took place "immediately before the abuse" as described above. Id., ¶ 38.

Based upon these facts, Plaintiff alleges that all of the individual persons who are named as Defendants [1] are liable for his injuries as individuals, as well as in their official capacities, claiming that each person acted outside of their authority or acted under color of state law. Id., ¶¶ 2-33. In addition, Plaintiff has named three City of Pittsburgh Bureau of Police "Units" – unit numbers 341K, 3412, and 3428 – as Defendants. Id., ¶¶ 28-33.

Plaintiff alleges that the City of Pittsburgh, a municipality, is a "person" subject to liability under 28 U.S.C. § 1983. Id., ¶ 42. The Complaint also states that the City of Pittsburgh "has in place a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officer that official policy, custom or acquiesced custom, is responsible for the deprivation of [rights] protected by the U.S. Constitution or U.S. Laws as in Plaintiff[']s tragic situation." Id., ¶ 43.

---

[1] This list of named individual Defendants includes: former Mayor of the City of Pittsburgh, Luke Ravenstahl; former City of Pittsburgh Police Chief, Nathan Harper; [former] acting City of Pittsburgh Police Chief, Regina McDonald; City of Pittsburgh Solicitor, Daniel Regan; City of Pittsburgh Public Safety Director, Michael Huss; City of Pittsburgh Assistant Police Chief, George Trosky; City of Pittsburgh Assistant Police Chief, Maurita Bryant; City of Pittsburgh police sergeants Vollberg and Caplan; City of Pittsburgh Council Members Darlene Harris, Theresa Kail-Smith, Bruce Kraus, Natalia Rudiak, Corey O'Connor, R. Danielle Lavelle, Deborah Gross, William Peduto, Ricky Burgess; City of Pittsburgh police officers Jeffrey Labella, Elizabeth Vitalbo, Kathy Degler, Matthew White, Kevin Walters, Morton Waverly, Henry Rogowski, and Officer Monticelli.

Plaintiff also alleges that the individual Defendants, upon execution of "the policy," are liable for the alleged violation of his rights. Id., ¶ 44.  In addition, Plaintiff claims that the individual Defendants have "tolerated" the illegal conduct, were deliberately indifferent and/or took no action concerning this illegal conduct, and/or failed to "properly alter or augment their employee training program" to adequately address the illegal conduct. Id., ¶ 44-47.

Defendants in their Brief in Support of their Motion to Dismiss, do not dispute that there was a automobile accident involving Plaintiff on the day in question, or that he was arrested following the automobile accident. Doc. no. 59, p. 1.  Defendants proffer additional facts surrounding the circumstances under which the automobile accident took place. Id.

Based largely on the above facts, Plaintiff asserts numerous causes of action – some of which are not cognizable under the law. Doc. no. 56, ¶ 79. The list of claims asserted by Plaintiff includes:

- "[D]eliberate indifference to the unlawful course of corrupt conduct[;]"
- Negligence;
- "[A]dvertent negligence[;]"
- "Hate crimes act[;]"
- Hate speech;
- "[B]eating while coupled with vulgar derogatory racial slurs[;]"
- Racial harassment;
- Ethnic Intimidation;
- Threats of violence;
- Threats of death;
- Assault with a deadly weapon;

5

- "[A]ggravated assault – or assault within maritime & territorial jurisdiction[;]"

- Excessive force;

- "[C]onstructive force[;]"

- "[E]xtreme force[;]"

- "[U]neccessary cause of wanton infliction of pain[;]"

- "[C]rime of violence[;]"

- "[V]iolation of an Official duty[;]"

- "[F]ailure to protect[;]"

- Abuse of authority;

- "[E]qual protection clause[;]"

- Improper professional conduct;

- Gross negligence;

- "[C]olor of law abuses[;]"

- "[V]iolation of Governmental code of conduct[;]"

- "[T]ampering with victim (Plaintiff)[;]"

- Conspiracy against rights;

- Terroristic threats;

- "[D]iscriminatory effects due to gender & race based[;]"

- "[U]nethical & while in the performance of duty as Government Officials, racial remarks causing fear & intimidation[;]"

- Harrassment – racial;

- Cruel and unusual punishment;

- Domestic terrorism;

6

- "[C]lass based animus[;]"

- Due process clause; and

- Violations of Plaintiff's Consitutional rights under the 1st, 5th, 8th and 14th Amendments.

Id.

Plaintiff's Amended Complaint indicates that he seeks fifty thousand dollars in compensatory damages and twenty-four million dollars in punitive damages, plus costs. Plaintiff's prayer for relief also requests that the Court order a federal investigation into the allegedly "corrupt Government Officials – including the Pittsburgh Police for their course of corrupt conduct and remove those responsible from their Authoritative position[,]" and further asks for an Order of Court requiring Defendants to "augment or alter its policies, procedures or training . . . ." Id., p. 31.

In addition to the above facts taken from theAmended Complaint, this Court also takes Judicial Notice of a docket on file with the Court of Common Pleas of Allegheny County, Pennsylvania, which indicates that Plaintiff was convicted on July 24, 2013 (following a non-jury trial) of the following crimes, all of which occurred on December 31, 2011:

- Fleeing or attempting to elude officer;

- DUI – highest rate of alcohol, 4th offense;

- DUI – general impairment, 1st and 2nd offense;

- Recklessly endangering another person;

- BAC.02 or greater, 2nd offense;

- Reckless driving; and

- Five counts of failing to stop at a red light.

See docket number CP-02-CR-0003801-2012, *Commonwealth v. Michael Lamont Ellis*, filed in the Court of Common Pleas of Allegheny County, Pennsylvania.

**III. Discussion**

    **A.    Overview**

This Court first recognizes its duty to give Plaintiff, a *pro se* litigant, wide latitude when considering the many claims he set forth in hisAmended Complaint at paragraph 79. However, even under this lenient standard, most of those claims are not actionable, and the Court finds that there are factual allegations that support a claim for excessive force. This is the only cognizable cause of action in this Section 1983 case for which there are also supportive factual allegations. The Court will now consider Defendants' arguments in its Motion to Dismiss this singular cause of action.

    **B.    Plaintiff's Claims and Plaintiff's Convictions**

Defendants first argue the Plaintiff's claims are barred by his convictions, relying upon *Heck v. Humphrey* 512 U.S. 477 (1994) in support of this argument. The United States Supreme Court in *Heck v. Humphrey*, held:

> . . . [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

8

*Heck,* 512 U.S. at 487-88 (1994) (footnotes omitted).

The United States Court of Appeals for the Third Circuit recently reiterated its holding that the *Heck* decision does not bar an excessive force claim. *See Sharif v. Picone,* 740 F.3d 263, 269-70 (2014) ("Indeed, we held in *Nelson v. Jashurek,* that *Heck* does not bar an excessive force claim because the claim can stand without challenging any element of the conviction. 109 F.3d 142, 145-46 (3d Cir.1997)).

In light of the *Sharif* and *Picone* decisions, the Court denies Defendants' Motion to Dismiss with respect to Plaintiff's excessive force claim.

### C.     Injuries due to Excessive Force versus Automobile Accident

Next, Defendants argue that Plaintiff's excessive force claim must be dismissed because the automobile accident immediately preceding his arrest for the above-mentioned crimes of which he was ultimately convicted, was the sole cause of his many injuries, not any force used by the officers. Plaintiff clearly alleges that his injuries were due the amount of force the police officers used during and after he was removed from the vehicle he had been operating. The Court must accept this as true at this stage of the proceedings.

The Court notes that Plaintiff alleges that the medical records will support his allegations, but notes that these records were not attached to his Amended Complaint. Nevertheless, Plaintiff has alleged sufficient facts and claims these facts will be supported by documentary (or other) evidence. Contrarily, Defendants argue that the police report and credible testimony of the officers will support their position – *i.e.* that the automobile collision itself caused Plaintiff's injuries.

The Court concludes that the factual question of what caused Plaintiff to sustain his injuries cannot be conclusively answered at this stage of the litigation proceedings. Accordingly,

Defendants' Motion to Dismiss the excessive force claim for lack of causation of injuries will be denied at this juncture.

**D.  Defendants City Council Members and Former City Solicitor**

Next, Defendants urge this Court to dismiss the Amended Complaint against certain named Defendants.  Specifically, Defendants urge this Court to dismiss Plaintiff's Amended Complaint against each member of Pittsburgh's City Council who was in office on December 31, 2011, as well as Former City Solicitor, Daniel Regan.  As noted by Defendants, on December 31, 2011, the individuals who comprised Pittsburgh's City Council were: Darlene Harris, Theresa Kail-Smith, Bruce Kraus, Natalia Rudiak, Corey O'Connor, Daniel Lavelle, Deborah Gross, and William Peduto.  Doc. no. 59, p. 10.  The Court also takes judicial notice of the fact that Ricky Burgess was a Pittsburgh City Council member on December 31, 2011.  Plaintiff's Amended Complaint claims each member of the City Council noted by Defendant, as well as Pittsburgh City Council member, Ricky Burgess, is liable to him individually, and in his or her [former] official capacity.

This Court's review of theAmended Complaint notes that there are many specific allegations asserted against City of Pittsburgh police officers LaBella and Vitalbo, but there are no specific allegations asserted against the named City of Pittsburgh Council members.  Paragraphs, 45 through 47 and 53 set forth what Plaintiff alleges the "[City of Pittsburgh] Council Members" did or did not do.  The allegations in these four paragraphs suggest that the members of City Council:

(1) "failed to properly alter or augment their employee training program to adequately address the Constitutional deprivations which continue to occur[;]"

(2) "tolerated known illegal conduct by their official practices, including Municipal employees who have deprived others of Constitutional rights, Laws and privileges secured by the Constitution[;]"

(3) "ha[ve] taken no proper action to augment or alter its Municipality's training program . . . to the deprivation of individuals rights[;]" and

(4) "have tolerated throughout timeless years, a course of conduct that is corrupt, arrogant, and is so permanent [and] wells settled, that has the force of law or virtually constitute law."

Doc. no. 56, ¶¶ 45-47, 53.

Plaintiff's Amended Complaint makes very similar allegations against the Former City Solicitor, Defendant Regan. See id., ¶¶ 59-70. All of the allegations set forth in paragraphs 59 through 70, essentially claim that the former City of Pittsburgh Solicitor, among others, deprived Plaintiff of his "rights and laws" because he was a "policymaker" who engaged in the alleged "corrupt conduct" by "acquiescing[,]" condoning, or "failing to correct" the conduct. Id.

Given these allegations (as well as the allegations asserted throughout his Amended Complaint that he was accosted and/or assaulted by the City of Pittsburgh Police officers – in part – due to racial discrimination) and construing them in favor of Plaintiff, to whom this Court is giving wide latitude because of his *pro se* status, the Court finds that the gravamen of these allegations is either: (1) Plaintiff believes these individuals are liable because of their alleged "supervisory" position over the City of Pittsburgh Police department; or (2) these alleged "supervisors" knew that the police officers were engaging in illegal conduct and acquiesced to that conduct, and/or failed to train them not to engage in illegal conduct.

Liability based on *respondeat superior* arises "solely on the basis of the existence of an employer-employee relationship," regardless of whether the employer had any part in causing harm. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978). In *Andrews v. City of Philadelphia*, the United States Court of Appeals for the Third Circuit held:

> Supervisory liability cannot be based solely upon the doctrine of *respondeat superior*, but there must be some affirmative conduct by the supervisor that played a role in the discrimination. *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). The necessary involvement can be shown in two ways, either "through allegations of personal direction or of actual knowledge and acquiescence," *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988), or through proof of direct discrimination by the supervisor. The existence of an order or acquiescence leading to discrimination must be pled and proven with appropriate specificity. *Id*.

895 F. 2d 1469, 1478 (3d Cir. 1990).

Thus, to the extent that Plaintiff's allegations against the City Council Members identified above, as well as the former City Solicitor, suggest that they are responsible for Plaintiff's injuries solely because these individuals were merely "supervisors" to the police officers on the night in question, (a fact which Defendants deny and dispute), the Court finds that *Monell* and its progeny would preclude such a claim.

In *Santiago v. Warminster Twnshp.*, the Court of Appeals for the Third Circuit, held that where a plaintiff's "allegations appear to invoke a theory of liability under which a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations" then the claim is not based on a *respondeat superior* theory of strict employer-employee liability; but rather, is based upon "a species of supervisory liability[.]" *Santiago,* 629 F.3d 121, 128-29 (3d Cir. 2010) (internal citations and quotes omitted). However, the Court in *Santiago* also held that in order to assert a claim for supervisory liability against a

defendant, the claim must be supported by facts with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" *Id.* at 129.

Here, the Amended Complaint only makes bald, broadly painted assertions, without any factual support, to reach the legal conclusion that these particular Defendants are liable to Plaintiff given their alleged supervisory status. The Amended Complaint is devoid of any specific allegations whereby Plaintiff claims the direct, personal involvement of any one or more City Council member(s) and or the City Solicitor that purportedly led to his injuries. The Amended Complaint is also devoid of any specific allegations which identifies one or more polic(ies) or rule(s) that these individuals adopted or to which they acquiesced, which allegedly violated Plaintiff's rights.

Accordingly, the Court finds the Amended Complaint to be legally insufficient to sustain a claim against these individuals and the Motion to Dismiss will be granted as to these individuals.

### E.     Defendant City of Pittsburgh

Plaintiff has asserted his Section 1983 claim against the City of Pittsburgh, as well as several "policymakers" and/or "supervisors" of the two police officers who allegedly used excessive force.

Section 1983 states in pertinent part that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. The United States Court of Appeals for the Third Circuit has explained that "[s]ection 1983 does not, by its

own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws" and held that "[i]n order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (internal quotes and citations omitted).

As mentioned in subpart "III. D." above, under *Monell, supra*, for municipal liability to attach, the municipality cannot merely be the employer of the government employee in question. Any injury must be inflicted by "execution of a government's policy or custom." *Monell,* 436 U.S. at 694. Thus, a municipality – such as the City of Pittsburgh as alleged here – can be held liable as a "person" under Section 1983 only if certain conditions are met. Under *Monell* a municipal defendant, such as the City of Pittsburgh, can be held liable only when the City's custom or policy, made its lawmakers or by those who acts represent official policy, inflict the injury.

Thus, Plaintiff's Amended Complaint needed to first point Defendants to the alleged "official policy" that directly inflicted the alleged injuries. Plaintiff's Amended Complaint also needed to support any such "official policy" allegation with additional facts to illustrate how that policy inflicted the specific harm. If Plaintiff's Amended Complaint had made these assertions (or had even alleged anything that could be used to identify the "official policy" in question here) the Amended Complaint would have asserted a cause of action against the City of Pittsburgh. However, this Court cannot discern from Plaintiff's Amended Complaint nor from his Briefs in Response to the Motion to Dismiss what "official policy" caused his alleged injuries.

To the extent that Plaintiff was attempting to allege (or argue) that a municipal custom existed and caused his alleged injuries, this Court agrees with Defendants that no matter how liberally the Amended Complaint is read, it lacks any allegations concerning a "permanent and well settled" course of conduct, *Monell*, 436 U.S. at 691, consisting of "practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. These elements must be pled with specificity so as to establish that a "municipal custom" existed and rose to the level of an "official policy."

Most of the statements set forth in the Amended Complaint, even when construing them in a light most favorable to Plaintiff fall into the category of "legal conclusion." Moreover, as noted above, the Amended Complaint provides no identification of the offensive "official policy" nor the factual support necessary to show that a municipal custom existed.

Because Plaintiff, in his Amended Complaint, failed to identify the specific "official policy" which directly inflicted the alleged injuries; and further, because there are not enough factual allegations to exemplify that a municipal custom existed and caused his alleged injuries, the City of Pittsburgh shall be dismissed as a Defendant.

**F.     Defendants Huss, Harper, McDonald, Trosk, Bryant, Ravenstahl, and Degler**

First, as to Plaintiff's attempt to contend that the above individuals can be held liable to Plaintiff in their "official" capacities, the Court disagrees for the same reasons set forth in subpart "III. E.," above.

Turning to Plaintiff's suggestion that these Defendants are liable to him in their individual capacities, the Court notes that if any one of these individuals had some sort of personal involvement through his or her actions, or knowledge about an alleged wrong, *Andrews*, 895 F.2d at 1478, the Amended Complaint had to first identify the policy or custom that was in

place, then indicate how each individual either personally acted upon that custom or policy and/or knew about the custom or policy and/or acquiesced to it.

Although Plaintiff's Amended Complaint continually suggests every Defendant "acquiesced" to the "edicts" and or "acts" of "corrupt conduct[,]" this is not enough to sustain a claim against these individuals. Plaintiff fails to plausibly establish what custom or policy existed, or establish how each of these specific individuals participated in furthering or ignoring a bad result of implementing such policy. Accordingly, these individual Defendants will be dismissed.

### G. Defendants White, Walters, Waverly, Rogowski, and Monticelli

On December 31, 2011, Defendants Walters, Waverly, Rogowski, and Monticelli were, and possibly still are, City of Pittsburgh police officers. Defendant White was the City of Pittsburgh Police Community Relations Officer. The Amended Complaint makes no specific allegations against any of these individuals. None of these individuals are supervisors or employers, and they do not appear to have been present during the automobile chase nor on the scene of the automobile accident immediately preceding the alleged use of excessive force.

Because there are no allegations concerning these individuals, and the Court cannot construe Plaintiff's Amended Complaint to assert a cause of action against any one of them, they why also be dismissed as Defendants.

## IV. Conclusion

Based on the foregoing, the Court will DENY Defendants' Motion to Dismiss Plaintiff's Section 1983 case asserting a cause of action for excessive force as to Defendants Jeffrey

LaBella and Elizabeth Vitalbo.  The Court will grant the Motion to Dismiss in all other respects as to all other Defendants.  An appropriate Order shall follow.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:	All Registered ECF Counsel  
	and  
	Michael Ellis, *pro se*  
	CV-7884 SCI Pittsburgh  
	PO Box 99991  
	Pittsburgh, PA 15233